## STATE v. FARMERS & MECHANICS SAVINGS BANK OF MINNEAPOLIS.[1]

March 10, 1911.

Nos. 16,767—(34).

**Taxing surplus of savings bank — property tax.**

Section 839, R. L. 1905, provides for the taxation of savings banks by deducting the sum total of the deposits and accounts payable from the sum total of the assets, including personal property appertaining to the business, and the surplus, if any, is listed and assessed as credits, according to the provisions of section 835, R. L. 1905. *Held*, the tax upon the surplus is a property tax, and not a tax upon the franchise to exist as a corporation.

**Same — listing municipal bonds.**

Municipal bonds issued by the municipalities of the territories of the United States are not exempt from taxation in the hands of savings banks in this state, and all such bonds must be listed and taken into account as a part of the assets, for the purpose of determining whether there is a surplus.

**Registry mortgage tax — class legislation.**

Chapter 328, Laws 1907, which requires savings banks to pay a registry mortgage tax upon mortgages owned by them, without exempting such mortgages from taxation otherwise, is not class legislation, nor in conflict with section 1, art. 14, of the federal constitution, and section 1, art. 9, of the state constitution.

[1]Reported in 130 N. W. 445, 851.

[Note] Liability of municipal bonds to taxation, see note in 12 L.R.A.(N.S.) 1159.

Proceedings in the district court for Hennepin county to collect the sum of $4,197.19, for taxes assessed upon the personal property of defendant for the year 1908 and remaining delinquent on April 1, 1909. The answer alleged that defendant listed its property and credits for taxation, and made its sworn statement, as required by R. L. 1905, § 839, and by said list and statement it appeared defendant owned no personal property subject to taxation; that the assessor disregarded such list and arbitrarily assessed defendant's personal property upon a valuation of $151,250, and pursuant to such assessment a tax for the sum demanded was levied, and that such assessment was illegal and grossly excessive; that of the personal property of defendant on May 1, 1908, mortgages to the amount of $161,650, on which the special mortgage tax had been paid, and municipal bonds of political subdivisions of the United States to the amount of $701,100 were exempt from assessment and taxation; that defendant made complaint of such illegal assessment before the board of equalization of the city of Minneapolis, but that board refused to review and correct such assessment. The proceedings were heard before John Day Smith, J., who made findings of fact and ordered judgment in favor of plaintiff. From an order denying a new trial, defendant appealed. Modified, and remanded with directions to deduct $3,750 from the amount of the assessment.

*Claude B. Leonard* and *William A. Lancaster,* for appellant.

Are the Minnesota mortgages, upon which the tax required by chapter 328, Laws 1907, has been paid, exempt from taxation in the hands of savings banks?

The class of real estate mortgages which banks like this appellant are authorized to accept, must necessarily demand the very lowest rate of interest, and it is easily apparent that if savings banks in taking mortgages, in the state of Minnesota, must pay the mortgage tax and then regular state, county and municipal taxes in addition, they are discriminated against in favor of individual and other corporate investors, and also in favor of those institutions which pay a gross earnings tax. If Laws 1907, p. 449, c. 328, § 3, provides that "the debts or obligations secured thereby, and the papers evidencing the same, shall be exempt from all other taxes," we are constrained

to believe that it is, in effect, not merely the security but the debt or the obligation to the extent, at least, of the security in this state that is, in reality, taxed. Although, therefore, it may be said that the tax is on the security and not on the debt or the obligation which it secures, still the debt and the obligation secured is absolutely exempted from all other taxes. In the particular respect to which the law unquestionably applies, the mortgage, mortgage debt or obligation, to the extent of the security in this state, is absolutely exempt from taxation in any other form.

Chapter 328 applies to all banks, savings banks and trust companies, so far as the payment of the registry tax is concerned, and it is just as imperative upon such banks, savings banks and trust companies as it is upon individual mortgagees, to pay the registry tax. The attempted exemption in section 3 is not to relieve such institutions from the payment of the tax, but it is merely an attempt to take away from them the benefit of the general exemption from other taxes. The only class of mortgagees, upon whom the payment of the registry tax is not made imperative, is the one designated in the latter portion of section 3, to wit: "Provided, that this act shall not apply to mortgages taken in good faith by persons or corporations whose personal property is expressly exempted from taxation by law, or is taxed upon the basis of gross earnings or other methods of commutation in lieu of all other taxes."

Section 3, therefore, when analyzed, will be found to contain three several propositions, to wit: First, a general exemption from taxation of all mortgages, and the debts or obligations secured thereby, and the papers evidencing the same, from any and all other forms of taxation. Second, that the exemption from all other forms of taxation should not be extended to banks, savings banks and trust companies, although each of the latter must pay the tax the same as all other mortgagees. Third, that the payment of the tax on the mortgages should not be exacted from those persons or corporations whose personal property is expressly exempted from taxation by law, or is taxed upon the basis of gross earnings or other methods of commutation in lieu of all other taxes.

By the amendment to the state constitution adopted November 6,

114 M.—7.

1906 (art. 9, § 1) it was provided that "taxes shall be uniform upon the same class of subjects." Uniformity of taxation may be violated by the exemptions allowed in quite as substantial a manner as in making different rates of taxation as against different kinds of property or different classes of owners. 1 Cooley, Taxation, p. 260.

By section 3 of the act of 1907 the mortgage and the debt or obligation secured thereby, is, until it is paid, in the hands of the mortgagee who has paid the registry tax, tax-paid or tax-exempt in every respect,—in other words, there has been paid in advance on that mortgage all the tax which the state can lawfully exact. If, however, we assume that all provisions of section 3 are valid and constitutional, the moment that mortgage is taken by or transferred to a bank or savings bank or a trust company, then it ceases to be exempt and becomes subject to all other taxes. Consequently, it is obvious that while the classification for taxation is property, to wit, mortgages, and while the thing exempted from other taxation by said section 3 is mortgages, and the debt or obligation secured thereby, yet there is the obvious discrimination against that kind of property in the hands of a particular class, to wit, banks, savings banks and trust companies.

Is it competent for the legislature, after providing for an exclusive method of taxing a particular class of property or class of subjects, to exempt a part of the owners of such class or property or class of subjects from all other forms of taxation and still leave a portion of such owners subject to taxation in the regular way, upon the value of such class of property or class of subjects? The question, of course, is not simply whether the legislature may or may not exempt from the particular tax some of the owners of the particular class of property. Having imposed the tax upon all, may it give a different effect to the tax as against some of the owners? Whether or not it may do so, must necessarily depend upon the construction to be given to the language of our constitution: "Taxes shall be uniform upon the same class of subjects."

"Uniformity of taxation" has been universally construed to require that all property similarly situated be taxed at the same rate

and in substantially the same manner. 27 Am. & Eng. Enc. (2d ed.) 594.

Under the law as it stood previous to the passage of the act of 1907, individual mortgagees were taxable upon their mortgages, or the debts or obligations secured thereby, as credits, and banks, savings banks and trust companies were, in legal effect, taxable in the same way and practically to the same effect, or the class of subjects, to wit, mortgages, were generally taxable, and no exemptions were allowed to any class of owners. The effect of chapter 328 is to relieve the individual owners of the mortgages from all other forms of taxation while it compels "banks, savings banks or trust companies" not only to pay the mortgage tax, but, in addition, leaves them subject to the property tax precisely as required by former provisions. In legal effect, therefore, this act must be considered and construed as though it for the first time had provided for the taxation of mortgages, and as though it had imposed upon all mortgagees the specific registry tax, and, as against "banks, savings banks or trust companies," had further required that, in addition to the said registry tax, such corporations must pay the regular state, county and municipal, tax upon such mortgages, and the debts and obligations secured thereby "as credits." If this law had in terms so expressly provided, we think no one would doubt its utter invalidity, because it would be so palpably in violation of the present constitutional provision that "taxes shall be uniform upon the same class of subjects." If the law be sustained, the same mortgage may this year be absolutely exempt from all other forms of taxation by reason of the fact that the registry tax has been paid by the individual mortgagee, and next year, by reason of its being owned and held by a savings bank, it will be subject to regular taxation. The mortgage, of course, has not changed its identity. It still belongs to the same "class of subjects." It becomes taxable not by reason of any change in its nature, but by the mere external fact of its ownership. This is evidently an arbitrary discrimination. Standard v. Board of Assessors, 95 Mich. 466.

Chapter 328 is unquestionably a revenue law. In its general purpose it is a substitute, to the extent of real estate mortgages within

the state, for the old methods of taxation upon credits. The revenue derived from this method of taxation is distributed as taxes paid upon real estate. See section 9, which reads as follows: "All taxes paid to the county treasurers, under the provisions of this act, shall be apportioned and distributed in the same manner as real estate taxes paid upon the real estate described in the mortgage." Certainly it would seem to be perfectly plain that the legislature may not, in the face of the constitutional amendment relating to "uniformity," take advantage of any supposed differences in ownership as a basis, not for a different form of taxation, but for double taxation.

Section 3 is just as specific in the exemption from taxation in the case of one owner as it is in the retention for taxation in the case of the other owner, and this is the essential vice in the law. It relates to the same class of subjects. It exempts in one case and taxes in the other. The rate is not the same. The method of taxation is not the same, and, consequently, the taxes cannot be the same; and if the rate of taxation and the taxes are not the same upon the same class, they cannot possibly be uniform within the meaning of the constitution. Nor is this difference in practical operation of the law merely occasional or incidental; it is inevitable. City of St. Louis v. Consolidated, 113 Mo. 83; Stroh v. City of Detroit, 131 Mich. 109; Chicago v. State, 128 Wis. 553.

Although some of the limitations imposed by sections 1, 2, 3 and 4 of article 9 of the old constitution have been removed by the adoption of the amendment of 1906, the most important provision of all, towit, that of uniformity, still remains, and most of what has hitherto been said by this court with reference to uniformity and equality of taxation is just as pertinent to cases arising under the amendment, as to those cases which arose prior thereto. Drew v. Tifft, 79 Minn. 175.

So much of section 3, of chapter 328, p. 449, Laws of 1907, as attempts to hold banks, savings banks and trust companies to double taxation on mortgages on real estate in the state of Minnesota, at the same time relieving all mortgages upon such real estate owned by others than banks, savings banks and trust companies from all other

taxes thereon than the registry tax provided for by the act, is unconstitutional as being in violation of section 1, article 14, of the amendments to the constitution of the United States.

It is now well settled that domestic corporations, and also foreign corporations, doing business within a state, and being within the jurisdiction of the state, are persons within the meaning of this amendment which prohibits any state from depriving any person of life, liberty or property without due process of law, or from denying to any person within its jurisdiction the equal protection of the laws.

If all of section 3 is valid and binding, then it is apparent that, so far as this particular case is concerned, the appellant is not only taxed upon the real estate mortgages which it held on May 1, 1908, the same as other individual owners of such mortgages were taxed, towit, fifty cents on each "One Hundred Dollars, or major fraction thereof, of the principal debt or obligation which is, or in any contingency may be, secured" thereby, but also upon the same mortgages at the rate of twenty-seven and three-fourths mills on the dollar. This is obviously unjust taxation, but this, we conceive, is not enough to constitute a violation of section 1 of the fourteenth amendment to the federal constitution. The only possible grounds, however, on which it can be contended that such taxation is warranted are: First: That the latter tax, towit, the tax levied in accordance with the provisions of R. L. 1905, § 839, is not, in any sense, a property tax, but is simply a tax upon the right or privilege of doing business. Second: That, while the tax levied is unequal, it is based upon a proper classification. It needs no argument to show that if all of section 3 is held to be valid and constitutional, then there is such discrimination against "banks, savings banks or trust companies" owning and holding mortgages upon real estate in the state of Minnesota, as to make it prohibitive for any such institutions to own and hold such mortgages. It is safe to say that the kind of mortgages in which this appellant is allowed to invest, as defined in subdivision 4 of section 3022 of the Revised Laws of 1905, command the lowest rate. When any loan is made by a savings bank upon unimproved property in this state, the property must be worth, at least, three times the amount loaned thereon, and when the mortgaged property is improved real

estate, it must be worth at least twice as much as is loaned thereon. This appellant is thus limited in its right to make loans upon Minnesota real estate, to such an extent, that it can only hope to make the same at the lowest rates. Even at the rate of six per cent. such mortgages would only net three cents and seven and one-fourth mills upon the dollar annually after payment of the regular tax, which, in 1908, was twenty-seven and three-fourths mills on the dollar, and, at the more usual rate of five per cent., the bank would only net two cents and three and one-fourth mills upon the dollar after payment of said tax.

It has been said time and again by the supreme court of the United States that the equal protection of the laws which has been guaranteed by the fourteenth amendment means the protection of equal laws. Barbier v. Connolly, 113 U. S. 27, 31; Yick Wo v. Hopkins, 118 U. S. 356; Hayes v. Missouri, 120 U. S. 68; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79.

It is also pointed out in the opinion in the Cotting case that there is a distinction between an inequality in the purpose of the law as expressed by its language and an inequality in its practical operation. Where the inequality inheres in the terms and conditions expressed in the statute, the act will, if the attempted classification is arbitrary, be held to be unconstitutional. Where, however, the inequality results from the operation of the law, as applied to a particular instance, the law will be sustained unless it is made to appear that under conditions known to exist the unequal and unjust operation of the law was actually designed and constituted the true purpose of the law. Moreover, slight and inconsequential inequalities will be disregarded. The inequality must be substantial and must affect a substantial right and result in unequal burdens to be availed of under the fourteenth amendment. Merchants & Manufacturers' Bank v. Pennsylvania, 167 U. S. 461.

There is not any reasonable or natural basis for putting banks, savings banks and trust companies into a class by themselves and subjecting them to the necessity of paying the registry tax, the same

as all other individuals or corporations, upon Minnesota real estate mortgages, and at the same time holding them to the necessity of paying the regular state, county and municipal taxes on such mortgages, while exempting all other individuals or corporations from paying any other taxes than the registry tax. It seems not merely difficult but impossible to point out any reasons why those portions of section 3 of which complaint is made do not clearly violate the spirit and purpose of the fourteenth amendment as thus expounded. Not only individuals but corporations, not excepting "banks, savings banks or trust companies," must pay the registry tax of fifty cents per One Hundred Dollars. That is an obligation which is imposed alike upon all owners of mortgages. The statute in the next breath provides that, upon the payment of this registry tax, all persons and corporations, excepting "banks, savings banks or trust companies," shall be exempt from all other taxes on account of such mortgages, but that "banks, savings banks or trust companies" must, in addition to the registry tax, pay the general state, county and municipal taxes as otherwise provided. It is impossible, we think, to conceive of any natural or reasonable basis for this discrimination, except the ipse dixit of the legislature.

*George T. Simpson,* Attorney General, *James Robertson,* County Attorney, and *Elmer W. Gray,* Assistant County Attorney, for the State.

LEWIS, J.

In compliance with sections 835 and 839, R. L. 1905, appellant returned to the city assessor of Minneapolis for taxation for the year 1908 a statement of its assets and liabilities, which showed that the liabilities exceeded the assets by $576,984.25. The following assets were omitted from the list: Bonds issued by municipalities in the territory of Oklahoma, $423,100; bonds issued by municipalities in Indian Territory, $278,000; mortgages on real estate in the state of Minnesota upon which the registry tax had been paid, amounting to $161,650, making a total of $862,750. It was admitted at the trial below that, had these bonds and mortgages been listed, the state-

ment would have shown a surplus of $285,765.75, and this amount was adopted by the trial court as the basis of the assessment.

The propositions involved suggest the following order:

1. If the tax provided for savings banks by section 839, R. L. 1905, is a franchise and not a property tax, then it will be unnecessary to consider whether the bonds and mortgages were properly included to make up the credits.

2. If the statute provides for a tax upon the property of savings banks, it then becomes necessary to determine whether bonds issued by municipalities in a territory of the United States are exempt from taxation under the federal constitution.

3. If the tax imposed by section 839 is a property tax, is the provision constitutional which excepts saving banks from the exemption from payment of all other taxes than the registry tax as provided by chapter 328, Laws 1907 (R. L. Supp. 1909, §§ 1038—25 to 1038—33)?

1. Does section 839 provide a franchise tax for savings banks? The constitution in force at the time the Revised Laws of 1905 went into effect makes no special mention of franchises as a subject of taxation. But, conceding that, within the meaning of article 9, § 1, franchises may be considered property, section 3 requires that all money, credits, and investments in bonds and stocks shall be taxed. And section 4 makes special reference to banks, and requires that notes and bills, moneys loaned, and all other property, effects, or dues of every description shall be taxed, so that all property employed in banking shall always be subject to a taxation equal to that imposed on the property of individuals. The first section of chapter 11, R. L. 1905, declares that all real and personal property shall be taxed, including the property of banks, but does not mention franchises. Section 797, which describes personal property in detail for the purposes of taxation, and section 835, which defines the duties of assessors, do not specify franchises. That term appears only once in chapter 11, and that is in section 821, which reads:

"The capital stock and franchises of corporations and persons, except as otherwise provided, shall be listed and taxed in the county, town, or district where the principal office or place of business of such

corporation or person is located in this state, if there be no such office or place of business, then at the place in this state where such corporation or person transacts business."

By section 835 the assessor is required to list for taxation the credits of banks having no capital stock separately from those having capital stock.

Appellant is a savings bank having no capital stock, and under section 839 the credits are found by deducting the amount of the deposits and liabilities from the amount of the assets. The surplus, if any, is taxed. It is not to be supposed that the legislature provided this method of determining the credits without intending to tax them as such. The state contends that this is the method provided for ascertaining the value of the franchise, and that there is no provision for a property tax. It will not be presumed that the legislature intended to ignore the constitutional mandate, which requires all of the property of banks to be taxed. If the method provided by section 839 is a franchise tax, it is not a property tax. Both may be imposed; but this is the only statute on the subject, and it does not provide for both. Besides, there is a great uncertainty as to the meaning of the term "franchise," as used in section 821. The corporate right to exist is often called a franchise. In common usage that term also refers to any special privilege or right conferred by legislative power on corporations or persons. Our statute does not define the term. Section 821 provides where capital stock and franchises (if taxed) shall be listed; but does not provide a method of ascertaining their value, nor declare how they shall be taxed. Savings banks do not enjoy any special rights or privileges, independent of the corporate right to exist, and the intention to tax such corporate franchise does not appear. Section 839 has reference to a property tax only, and the surplus of savings banks as there determined is property.

2. Were the bonds of municipalities of Oklahoma and Indian Territories exempt?

In the leading case of McCulloch v. State of Maryland, 4 Wheat. 316, 4 L. ed. 579, it was held that the notes of the Bank of the United States were exempt from taxation by the states, not because of any

express prohibition in the constitution, but because it was necessarily implied. In the words of Chief Justice Marshall (p. 426): "On a principle which so entirely pervades the constitution, is so intermixed with the materials which compose it, so interwoven with its web, so blended with its texture, as to be incapable of being separated from it without rending it into shreds." In a late case, Hibernia Savings & Loan Society v. San Francisco, 200 U. S. 310, 26 Sup. Ct. 265, 50 L. ed. 495, the supreme court had occasion to review most of the decisions on the subject, and the principle that the states cannot tax official agencies of the federal government was held not to apply to checks and warrants issued by the United States treasurer for payment of interest on United States bonds.

In Weston v. City Council of Charleston, 2 Pet. 449, 7 L. ed. 481, that court adhered to the decision in McCulloch v. State of Maryland; but the general principles discussed in Weston v. City Council of Charleston had reference to interferences by state taxation with the power of the government to "borrow money on the credit of the United States." The city of Charleston had passed an ordinance subjecting to taxation stock issued and sold by the United States as a means of raising money. A tax on the stock was held to be a tax on the contract, and consequently a tax on the power to borrow money on the credit of the United States. Although the Chief Justice wrote broadly: "If the right to impose the tax exists, it is a right which in its nature acknowledges no limits. It may be carried to any extent within the jurisdiction of the state or corporation which imposes it, which the will of each state and corporation may prescribe"—he was speaking of the power of the government to borrow money. In fact the limitations of the doctrine were suggested in McCulloch v. State of Maryland. It was there declared that it did not extend to a tax on the real property of the United States Bank in common with the other real property within the state, "nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the state." Emphasis was put upon the fact that the stamp tax on the bank notes was a tax

on the operation of an instrument employed by the government to carry its power into execution.

The broad doctrine discussed in McCulloch v. State of Maryland, was limited in National Bank v: Commonwealth, 9 Wall. 353, 19 L. ed. 701, where the court decided that the principle did not prevent the states from taxing the shares of national banks held by the stockholders, as distinguished from the capital of the bank invested in federal securities. With reference to the limitations of the rule Justice Miller wrote as follows: "But the doctrine has its foundation in the proposition that the right of taxation may be so used in such cases as to destroy the instrumentalities by which the government proposes to effect its lawful purposes in the states. * * * The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle itself is founded. That limitation is that the agencies of the federal government are only exempted from state legislation, so far as that legislation may be interfered with, or impair their efficiency in performing the functions by which they are designed to serve that government."

The limitations of the doctrine were pointed out and applied in Railroad Co. v. Peniston, 18 Wall. 5, 21 L. ed. 787, where the Union Pacific Railroad Company claimed that its property was exempt from taxation. It was decided that no constitutional implications prohibited a state tax upon the property of an agent of the government merely because it is the property of such agent. "It is, therefore, manifest that the exemption of federal agencies from state taxation is dependent, not upon the nature of the agents or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is,. upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does it hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of federal powers."

Of course territories are political subdivisions of the United States, and are not independent sovereignties. Perhaps as compre-

hensive a statement of their relation to the general government as any is found in National Bank v. County of Yankton, 101 U. S. 129, 25 L. ed. 1046, where it was said: "The territories are but political subdivisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective states, and congress may legislate for them as a state does for its municipal organizations. The organic law of a territory takes the place of a constitution as the fundamental law of the local government. It is obligatory on and binds the territorial authorities; but congress is supreme, and for the purposes of this department of its governmental authority has all the powers of the people of the United States, except such as have been expressly or by implication reserved in the prohibitions of the constitution."

The court further stated that the power of congress to amend the acts of a territorial legislature was a power incident to sovereignty and continued until granted away. "Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the territories and all the departments of the territorial governments. It may do for the territories what the people, under the constitution of the United States, may do for the states." See also Snow v. U. S., 18 Wall. 317, 21 L. ed. 784; Mormon Church v. U. S., 136 U. S. 1, 10 Sup. Ct. 792, 34 L. ed. 478; Murphy v. Ramsey, 114 U. S. 15, 5 Sup. Ct. 747, 29 L. ed. 47; Atchison, T. & S. Fé Ry. Co. v. Sowers, 213 U. S. 55, 29 Sup. Ct. 397, 53 L. ed. 695; Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498.

We must proceed, then, with the understanding that Oklahoma and Indian territories were instrumentalities or agencies provided by congress for the government of the people within their borders, and that the municipalities were the agents of the territories and of the general government to more effectively accomplish the purposes of government in local affairs. But does it follow that all the property of territories or of their municipalities is exempt from taxation under

the doctrine of McCulloch v. State of Maryland? If the true test for determining the right of taxation by the states is not the fact of agency, but whether it will operate to impair or interfere with such agencies in performing the functions by which they are designed to serve the United States, then we must inquire whether the municipalities in question will be interfered with in the performance of those functions by taxing their bonds in the hands of purchasers in this state. The people of those municipalities found it convenient to issue bonds in order that they might carry on immediate local improvements. In a broad sense they were agencies of the territories, and were conducting those enterprises for the United States government. Those people were exercising the right of local self-government under the authority of the United States; but the United States was not responsible for all their acts, and it could not be claimed that their obligations were guaranteed by the United States. And if the bonds they issued were sold on the strength of the municipal credit alone, how is the power of the government to borrow money on the credit of the United States affected by their taxation by the states? If this tax cannot be imposed, then these bonds command a higher price on the market, and the municipalities of the states are placed at a disadvantage in disposing of their bonds. If the tax may be imposed, then such municipal bonds take their proper market value on their merits in the money markets of the world. To hold such bonds exempt from taxation by the states would push the doctrine of interference with the agencies of the government to the extreme limit—a limit certainly not expressed in the federal constitution, and not implied if we correctly interpret the decisions of the federal supreme court.

3. Chapter 328, p. 448, Laws 1907, imposes a tax of fifty cents on each $100, or a major fraction thereof, of the principal debt which is secured by any mortgage of real property in this state, and registered after April 30, 1907. Section 3 (p. 449) reads: "All mortgages upon which such tax has been paid, with the debts or obligations secured thereby and the papers evidencing the same, shall be exempt from all other taxes; but nothing herein shall exempt such property from the operation of the laws relating to the taxa-

tion of gifts and inheritances, or those governing the taxation of banks, savings banks, or trust companies; provided, that this act shall not apply to mortgages taken in good faith by persons or corporations whose personal property is expressly exempted from taxation by law, or is taxed on the basis of gross earnings, or other method of commutation in lieu of all other taxes." According to the terms of the proviso, the act does not apply to the persons and corporations therein mentioned. The act applies to banks, savings banks, and trust companies, although the mortgages they hold are not exempt from ordinary taxation.

The question then is: Did the legislature adopt an arbitrary basis of classification, such as to come within the prohibitions in our constitution, or to infringe upon that provision of the federal constitution which prohibits the passage of laws by a state which deny to any person within its jurisdiction the equal protection of the laws. The exception from the exemption includes banks and trust companies; but we are concerned at this time with the status of saving banks only, and we need not consider whether the classification is proper for those institutions.

Section 839, R. L. 1905, treats of savings banks, for the purposes of taxation, in a special manner. They have no capital stock, yet their property is not taxed in the same way as the property of individuals or of other corporations. By section 838 the value of the stock of corporations having capital stock is ascertained by deducting the value of the real and personal property from the market or actual value of the stock, and the amount of the difference is taxed as stocks and bonds, and the real estate and personal property are taxed in the ordinary way. Section 839 places all banks without capital stock (except savings banks), brokers, and stockjobbers in one class, and savings banks in another class. The former are taxed by ascertaining the difference between the amount of money on hand or in transit, the amount of money in the hands of others subject to draft, the amount of checks or cash items, etc., the amount of bills receivable and other credits, and from the total of these amounts the deposits and accounts payable are deducted. The balance, if any, is assessed as money under section 835. The bonds and stocks and personal and

real property are assessed separately in the ordinary way. But in the case of savings banks no specific property is taxed separately except real property. Its money, checks, bills receivable, bonds, and stocks, and all personal property appertaining to the business, are listed for the purpose of ascertaining whether there is a surplus, and the surplus is found by deducting the total of the deposits and accounts payable from the total value of the assets.

It therefore appears that savings banks enjoy privileges accorded to no other person or corporation subject to taxation. Other corporations are entitled to deduct their liabilities from their credits only (section 836). Savings banks alone are entitled to deduct their liabilities from the sum total of all their assets, except real property. Chapter 328, p. 448, Laws 1907, was evidently drawn with reference to this advantage, and, if these institutions had acquired a valuable advantage in business by reason of this privilege, that fact was a sufficient reason for attempting a more equitable distribution of the burdens of taxation, by excepting them from the exemption in the mortgage tax law. There is a reason for the classification, and there is present that substantial distinction demanded by the law between the objects placed in the class and those excluded.

We have read the very able brief of appellant on the "Equal Protection of the Laws" as guaranteed by the federal constitution. Many of the propositions advanced must be accepted as settled by the decisions of the federal supreme court. In Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. ed. 578, that court stated that all persons subject to legislation, limited as to the objects to which it is directed, shall be treated alike under like circumstances and considerations, both in the privileges conferred and the limitations imposed. This declaration of the law corresponds to the rule of this court in determining a proper classification. That court has also announced that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.

Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666. In Cotting v. Kansas City Stockyards, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. ed. 92, an act of the legislature of Kansas was held invalid because it established a classification between stockyards doing a large business and those doing a small business. It was stated in the course of the opinion (p. 108) : "Equal protection of the laws means equal exemption with others of the same class from all charges and burdens of every kind." But the inequality must be substantial, and affect a substantial right, and result in unequal burdens. Merchants & Manufacturers Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236.

Our attention is called to the distinction between imposing conditions upon the right to incorporation and the imposing of obligations upon such existing corporations. This phase of the question is discussed in Western Union Tel. Co. v. State of Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. ed. 355. Appellant contends that the opportunity and good will of savings banks, permissible under the tax laws, if any exist, are vested in them by virtue of their right of existence as corporations. Chapter 58, R. L. 1905, with respect to saving banks, throws many safeguards around them. The purpose seems to have been to provide a safe method for persons of small means to accumulate their savings. But because it may have been found profitable to invest the deposits in mortgages on real estate in this state is not a sufficient reason why savings banks should not pay the registry mortgage tax, and at the same time submit to the inclusion of such mortgages among the assets for the purpose of ascertaining the surplus. This exception could only amount to a discrimination or double taxation if these institutions stood upon the same footing as other banks and corporations. Experience may show that it may be advisable to adopt some other method or classification in the future. The legislature is not bound by any fast rule, and may change the method of taxation whenever in its judgment the necessity arises, subject only to the limitations of the constitution as construed by the courts.

It is our opinion that chapter 328, Laws 1907, is not in conflict with the federal or the state constitution.

Affirmed.

On April 13, 1911, the following opinion was filed:

PER CURIAM.

In the petition for reargument attention is called to the fact that appellant's personal property, consisting of office furniture, was separately assessed at $3,750. This error was covered by proper assignments, but no mention was made of it in the briefs, and if the point was raised in the oral argument it was not recalled at the time the opinion was prepared. However, respondent consents that the question be disposed of on the merits.

Since this property had already been taken into consideration in determining the surplus, it could not be separately taxed. Such a course would result in double taxation, which is forbidden by the constitution and is not authorized by the statute. The decision is therefore modified, and the cause remanded, with directions to deduct the sum of $3,750 from the amount of the assessment.

Although special reference may not have been made in the opinion to section 1, art. 9, of the constitution, the argument and decision were intended to include a consideration of the requirement that taxes must be uniform upon the same class of subjects.

Petition for reargument denied.